IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Mary E. Harry, | ) | C/A No.: 3:12-2268-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Pilgrim's Pride Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Mary E. Harry ("Plaintiff") is suing her employer Pilgrim's Pride Corporation ("Defendant") alleging claims pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq. ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.* ("ADEA"). She also asserts a retaliation claim under the South Carolina Worker's Compensation Act ("SCWCA"), S.C. Code Ann. § 41-1-80.

This matter comes before the court on Defendant's motion for summary judgment filed on April 5, 2013. [Entry #23]. Plaintiff filed a response on April 22, 2013 [Entry #26], and Defendant filed a reply on May 13, 2013 [Entry #32]. The motion having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motion.

I.      Factual and Procedural Background

Plaintiff began working for Defendant as a rehanger at its chicken processing plant in Sumter, South Carolina, in October 1997. Pl. Dep. 5:4–14 [Plaintiff's deposition may be found at Entry #23-2]. Plaintiff testified that in 2003, a muscle popped in her right arm and she was moved to another position cleaning the birds and putting them back on the line. Pl. Dep. 10:25–11: 11. She stated that when she had problems in that position, Defendant moved her to the U.S.D.A. area where she continued to have difficulties because she had to hang the birds back on the line. Pl. Dep. 11:11–14. Defendant then moved Plaintiff to a position weighing paws (feet), where she began working with restrictions in approximately 2005. Pl. Dep. 11:14–17, 13:7–14. She testified that "throughout the years, everywhere [she] worked, [she] was having problems with [her] shoulder" so Defendant put her in positions where she "wouldn't have to be reaching up, nor outward" and could keep her arms down while working. Pl. Dep. 13:15–20.

Even though she had been moved around to different jobs, Plaintiff testified that she continued to experience problems with her shoulder, which prompted her to see the company nurse, Lillian (LNU). Pl. Dep. 15:5–14. Plaintiff stated that in approximately March 2005, Lillian sent Plaintiff to the company doctor, Dr. Pommerenke, who diagnosed her with chronic strained muscles and bicipital tendonitis. Pl. Dep. 15:17–16:6. Plaintiff testified that Dr. Pommerenke limited her to no reaching up and no reaching beyond forearm limit. Pl. Dep. 17:6–11. She further testified that Lillian decided the restrictions would become permanent because Plaintiff had experienced the same problems repeatedly. Pl. Dep. 17:24–18:22. Although Plaintiff stated that Lillian

2

gave her a piece of paper indicating that the restrictions were permanent, Plaintiff no longer has the note. Pl. Dep. 18:23–19:2.

Plaintiff testified that, with her restrictions, she was able to weigh paws. Pl. Dep. 19:3–9. However, she stated that she began having problems again when a new supervisor wanted her to clean paws, which required upward reaching. Pl. Dep. 19:11–16.

Plaintiff testified that she spoke with human resources representative Jerry Jackson in early 2006 about the reaching she had to do while cleaning paws. Pl. Dep. 50:16–24. She testified that, within the week, she was moved to the breading department as a line adjuster where she would not have to reach up or out and the job was less strenuous and less repetitive. Pl. Dep. 22:20–25, 50:21–24, 52:4–16; DuBose Dep. 7:24–8:1 [Tony DuBose's deposition may be found at Entry #27-2]. A personnel transaction document dated February 14, 2006, indicates that Plaintiff was given a department transfer as a worker's compensation accommodation. [Entry #27-1 at 20; *see also* Jackson Dep. 46:1–10 (Barbara Grant Jackson's deposition may be found at Entry #27-1)]. Plaintiff testified that the line adjuster position complied with all of her restrictions and she continues to work in the same position. Pl. Dep. 23:3–6, 53:20–23.

In her position as a line adjuster, Plaintiff is required to spread or straighten out chicken tenders as they pass by on a conveyer belt. Pl. Dep. 23:10–18; DuBose Dep. 8:2–6. She stands on a stand while performing her job and estimated that she has to reach about 20 inches to the middle of the belt. Pl. Dep. at 29:24–25, 43:8–22; *see also* DuBose Dep. 11:10–12 (testifying that the belt is 42 inches wide). She stated that the

3

conveyer belt is higher at one end and that a person working on the high end must raise her arms up higher to work. Pl. Dep. 29:7–17; *see also* Pl. Dep. 42:18–43:1 (estimating that one end of the belt is approximately three to four inches higher than the other end); DuBose Dep. 93:10–15 (estimating that the pitch of the belt is at most two inches). She testified that approximately 10 to 14 women perform this job, with half of them on one side of the conveyer belt and half on the other side. Pl. Dep. 23:19–11. Plaintiff stated that the women occasionally rotate positions on the line. Pl. Dep. 24:11–14.

On May 15, 2007, Plaintiff filed a written complaint against her supervisor, Tony DuBose, stating that he had not complied with the terms of her medical restrictions on file in the medical department. [Entry #27-1 at 21]. She claimed that the use of a stand on the line took a lot of pressure off of her arm, but that DuBose had taken her stand away and given it to another employee. *Id.* She also stated that DuBose rotated her on the line and that she was sometimes required to keep her arms in an upward position. *Id.*

On October 24, 2007, Plaintiff filed an employee complaint alleging that DuBose had moved her despite her seniority, yelled at her in front of other employees, took away her stand, and was generally disrespectful towards her. [Entry #27-1 at 22–24].

Plaintiff testified that in 2010, DuBose told her that she had to extend her arm further while doing her job and required her to reach across the conveyer belt. Pl. Dep. 36:2–19, 54:10–13. She stated that DuBose also moved her so that she was working by the freezer and that she informed him that she could not work by the freezer due to a restriction she had related to a finger injury. Pl. Dep. 56:10–57:5. However, when she went to the medical department with DuBose, she found out that she had no restrictions

4

on file. Pl. Dep. 57:6–17. Plaintiff stated that she then met with Mr. Crawford (FNU) and human resources representative Barbara Grant Jackson regarding her alleged restrictions. She claims that after several meetings, she was told that the document she produced regarding her restrictions from 2005 did not say that the restrictions were permanent and that a five-year-old injury no longer counted as a work-related injury. Pl. Dep. 61:5–64:1.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 15, 2011, alleging age and disability discrimination. [Entry #23-5]. She asserted that DuBose had been aware of her restrictions for five years, but changed her position on the line and told her that the new owners of the company did not honor past restrictions. *Id.* She also claimed that Defendant's management allowed younger employees to take longer lunches without consequences. *Id.*

An incident report dated February 28, 2011, indicates that Plaintiff reported that in October 2010, DuBose rotated her against the prior restrictions related to her right shoulder. [Entry #27-5 at 1]. The report further notes that Plaintiff's right shoulder began hurting again due to "reaching too far" and that she does fine as long as she stays in "her spot." *Id.* Notations on the report state that there were no restrictions in Plaintiff's file. *Id.*

Also on February 28, 2011, Plaintiff saw Dr. Eric Byrd for a medical evaluation of her complaints of right shoulder pain. [Entry #27-3 at 1]. Dr. Byrd noted that Plaintiff "apparently thought she was on some kind of permanent restrictions but around 2010 she began having to reach outward with the right hand and now complains of more intense

5

right shoulder pain." *Id.* On examination, Plaintiff demonstrated full forward elevation, full abduction, and very little tenderness over the anterior aspect of her right shoulder. *Id.* An x-ray showed no acute abnormality, and Dr. Byrd diagnosed probable cuff tendonitis to Plaintiff's right shoulder. *Id.* He advised that Plaintiff should avoid any work above shoulder level and any reaching outward with the right hand. *Id.* He noted that in view of Plaintiff's past history, the restriction regarding reaching outward with the arm may need to be made permanent. *Id.* Defendant placed Plaintiff on transitional duty incorporating the restrictions set forth by Dr. Byrd. [Entry #27-3 at 3].

On June 17, 2011, Dr. Byrd opined that Plaintiff had reached maximum medical improvement by April 25, 2011; had a 0% medical impairment in her right shoulder; and should "avoid above shoulder level work or reaching beyond arm's length." [Entry #27-4 at 2]. He further opined that Plaintiff did not require any future medical care related to her work-related injury. *Id.* Plaintiff testified that Dr. Byrd also told her that she should not be rotated on the belt so that she would not have to reach out on the line. Pl. Dep. 32:15–20, 75:24–76:2. She testified that she brought the restrictions to nurse Mary (LNU) and that Defendant abided by those restrictions, including permitting Plaintiff to stay in the same position on the line. Pl. Dep. 73:13–25, 76:1–5.

Plaintiff filed a worker's compensation claim in approximately 2011 asserting that she had torn her rotator cuff. Pl. Dep. 34:1–14. She underwent rotator cuff surgery in April 2012 and was out of work until August 2012. Pl. Dep. 34:20–35:3. On July 31, 2012, her treating orthopedist released her to return to work with light duties on August 3, 2012. [Entry #23-6]. Plaintiff was limited to pushing and pulling three pounds, lifting

6

and carrying one pound, no overhead work, and no work at heights. *Id.* She testified that she did not recall any restrictions related to reaching. Pl. Dep. 35:11–20.

Plaintiff stated that although she was supposed to be "on very light duty," her job never changed and that her request to work in the company store was denied. Pl. Dep. 77:7–17, 93:10–16, 96:9–13. She also testified that the company had not violated any restrictions imposed by her doctor following her surgery. Pl. Dep. 81:11–14, 103:13–16. She recalled that after her surgery, DuBose told her to "just get what you can in terms of straightening out the tenders." Pl. Dep. 43:2–7. Although DuBose testified that he has not moved Plaintiff from her position on the line in "a couple of years" (DuBose Dep. 83:17–84:24), she contends that he rotated her on the line as recently as September 2012 (Pl. Dep. 102:17–103:12).[1]

Plaintiff has never been disciplined in any of her positions with Defendant. Pl. Dep. 6:9–12, 19:24–20:1, 23:7–9. She testified that she did not know whether there was any less strenuous job at the plant than her job as a line adjuster. Pl. Dep. 51:10–52:3.

II.     Discussion

    A.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will

---

[1] The undersigned notes that, later in her deposition, Plaintiff testified that she could not recall being moved from her position since 2010 or before. Pl. Dep. 174:21–176:5.

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

    B.    Analysis

        1.    ADA Claim

In order to establish a prima facie case for failure to accommodate a disability under the ADA, a plaintiff must establish four elements by a preponderance of the evidence: (1) she was a qualified individual with a disability under the meaning of the ADA; (2) her employer had notice of her disability; (3) she could perform the essential functions of her job with reasonable accommodation; and (4) her employer failed to make such accommodation. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). Defendant argues that Plaintiff cannot establish any element of the prima facie case. [Entry #23-1 at 11–16].

Under the ADA, a disability is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include "performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). As a result of the ADA Amendments Act of 2008 ("ADAAA"), which became effective January 1, 2009, the regulations now provide that "substantially limits" is to be

"construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Not every impairment, however, constitutes a disability. 29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiff asserts that she is substantially limited in the major life activity of working. [Entry #26 at 12]. She contends that she has experienced pain in her arm since at least 2006 when she was "given a worker's compensation accommodation for the first time" and moved to the line adjuster position. *Id.* She further contends that because she continued to have trouble performing her job even after being placed on light duty with restrictions creates a question of fact as to whether she was substantially limited in the major life activity of working. *Id.* at 12–13.

As an initial matter, Plaintiff is incorrect in stating that there is a question of fact as to whether she is disabled under the ADA. The question of whether a plaintiff meets the definition of disabled "is a question of law for the court, not a question of fact for the jury." *Hooven–Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001). Furthermore, Plaintiff's argument directly contradicts her contention that Defendant has not provided her an accommodation. Plaintiff has continued to work as a line adjuster throughout the relevant time period and has done so to her supervisor's satisfaction. Pl. Dep. 108:19–20, 109:6–18; DuBose Dep. 41:16–18. To demonstrate that she is substantially limited in the life activity of working, she must concede that she has been working with an accommodation. If she has not been given an accommodation, but has continued to work, then she cannot be substantially limited in the major life activity of working.

9

Under either scenario, Plaintiff cannot establish a prima facie case of failure to accommodate. In addition, the medical records demonstrate that Plaintiff was assigned a 0% impairment rating of her shoulder. [Entry #27-4 at 2]. Based on the foregoing, the undersigned recommends summary judgment be entered in favor of Defendant on Plaintiff's ADA claim.

Even assuming Plaintiff has a disability under the ADA and setting aside the logical flaw in her arguments, Plaintiff has not shown that she was denied a reasonable accommodation. Plaintiff admits that she was accommodated in 2006 when Defendant moved her to a position as a line adjuster in the breading department where the work was less strenuous and less repetitive. [Entry #26 at 12; *see also* Pl. Dep. 50:21–24]. She asserts, however, that she has not been accommodated in her position as a line adjuster because "she was moved or rotated which contributed to her pain." [Entry #26 at 14]. Although not explicitly stated by Plaintiff, it appears the accommodation she seeks is that she not be moved from her usual position on the line. The undersigned finds this accommodation reasonable in light of Plaintiff's testimony regarding the slope of the line and its impact on the reaching required for Plaintiff to do her job (Pl. Dep. 29:7–17). At issue is whether Plaintiff has been denied the accommodation she seeks. Plaintiff's deposition testimony is contradictory on this issue. She states both that she was not rotated later than 2010 (Pl. Dep. 174:21–176:5) and that she was rotated in 2012 (Pl. Dep. 102:17–103:12). DuBose testified that he has not moved Plaintiff from her usual position in "a couple of years." DuBose Dep. 83:17–84:24. In any event, however, the record shows that when she requested to be returned to her usual position, her request was

10

granted. DuBose Dep. 62:6–63:11; Jackson Dep. 15:15–16:9; 17:17–18:14. Plaintiff has alleged only isolated and brief instances in which she was rotated on the line. Pl. Dep. 165:11–20 (estimating she had been moved five to seven times since 2006). For these reasons, the undersigned recommends a finding that Plaintiff has been given the reasonable accommodation she seeks.

To the extent Plaintiff asserts that she should have been given a position in the company store, the undersigned finds the argument unavailing. Plaintiff testified that she asked the company nurse if she could be placed in the company store in August 2012, but did not make that request prior to filing her EEOC charge. Pl. Dep. 187:15–188:6. She stated that the nurse informed her that no one was being placed in the company store at that time. Pl. Dep. 188:7–16. Even if a position had been available, the job requirements in the company store do not comply with Plaintiff's reaching restrictions. Dr. Byrd instructed Plaintiff to avoid reaching beyond arm's length [Entry #27-4 at 2], but Plaintiff admitted that workers in the company store had to remove frocks from a laundry bin, fold them, retrieve items from the shelves for customers, and reach out and hand items to the customers over a half door. Pl. Dep. 120:24–123:23; *see also* Crutcher Aff. at Entry #23-8 (stating that company store employees often retrieve smocks from deep shelves that are six to seven feet off the ground and must reach down two feet or more into laundry bins to retrieve soiled smocks). Thus, the undersigned recommends a finding that Defendant did not deny Plaintiff a reasonable accommodation by refusing to transfer her to the company store.

11

Based on the foregoing, the undersigned recommends granting Defendant's motion for summary judgment on Plaintiff's ADA claim.[2]

### 2.  Plaintiff's remaining claims[3]

In her complaint, Plaintiff asserts an age discrimination claim under the ADEA and a retaliation claim under the SCWCA. [Entry #1 at 5–6]. Defendant argues that these claims fail as a matter of law because Plaintiff has not demonstrated that she has suffered an adverse employment action as both claims require. [Entry #23-1 at 16–18]. Plaintiff failed to respond to Defendant's arguments in her response brief. Based on her failure to respond or to provide any meaningful argument in support of such claims, the undersigned recommends granting Defendant's summary judgment motion as to Plaintiff's claims under the ADEA and SCWCA.

### III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #23] be granted.

IT IS SO RECOMMENDED.

*(signature: Shiva V. Hodges)*

September 12, 2013                                       Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

---

[2] In light of Plaintiff's failure to state a prima facie case under the ADA, the undersigned deems it unnecessary to address Defendant's exhaustion argument.

[3] Plaintiff's response brief includes the phrases "hostile work environment" and "pattern and practice of discrimination" [Entry #26 at 10]; however, Plaintiff did not assert such claims in her complaint, nor do they appear to have been exhausted. Therefore, the undersigned concludes that the use of these terms of art was in error and that Plaintiff does not intend to assert such claims.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).