IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| MARY E. HARRY, | ) | C/A No. 3:12-2268-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| PILGRIM'S PRIDE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, Plaintiff, Mary E. Harry ("Plaintiff"), seeks recovery from her current employer, Pilgrim's Pride Corporation ("Defendant"), for alleged violation of three employment-related statutes: (1) the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.* ("ADEA"); and the South Carolina Worker's Compensation Act ("SCWCA"), S.C. Code Ann. § 41-1-80.

The matter is before the court on Defendant's motion for summary judgment. Dkt. No. 23. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On September 12, 2013, the Magistrate Judge issued a Report recommending that Defendant's motion for summary judgment be granted. Dkt. No. 34.

Plaintiff filed timely objections on September 30, 2013, objecting only to the recommended dismissal of her ADA claim. Dkt. No. 35 (conceding she "has abandoned both [her] Age Discrimination and Worker's Compensation Retaliation claims"). Defendant filed a reply on October 16, 2013. Dkt. No. 36. The matter is now ripe for resolution.

1

For the reasons stated below, the court adopts the Report and grants Defendant's motion for summary judgment in full. The Clerk of Court is, therefore, directed to enter judgment for Defendant on all claims.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## FACTS

Plaintiff has not directed the court to any specific error in the Report's statement of facts. Finding no clear error in this portion of the Report, the court adopts it but includes a summary of facts most critical to Plaintiff's objections. Because these are taken from the Report's statement of facts, to which no specific objection is made, the court cites primarily to the Report, with added citations to some specific documents.

Plaintiff has been employed by Defendant (or its predecessor) since 1997. Report at 2. In or around 2003, Plaintiff began experiencing pain in her right shoulder and arm and reported this

2

difficulty to Defendant. *Id.* Defendant reassigned Plaintiff several times, seeking to place her in a job that Plaintiff could perform without discomfort. *Id.* at 2.

In March 2005, Plaintiff was diagnosed with chronic strained muscles and bicipital tendinitis in her right arm. The doctor restricted Plaintiff to work which did not require her to reach up or out beyond her forearm limit with that arm. *Id.* The company nurse, thereafter, told Plaintiff the restrictions would be permanent but the permanent nature of the restrictions was not placed in writing. *Id.* at 3.

Plaintiff was reassigned after these restrictions were imposed, but began having difficulties after her supervisor modified her duties in early 2006. *Id.* Plaintiff complained to human resources and, within a week, was moved to a position as a "line adjuster." *Id.* at 3.[1] Plaintiff concedes the line adjuster position accommodated her difficulties so long as she could use a stand and was not rotated to different positions on the line. *Id.* at 3-4.

Between 2006 and October 2010, Plaintiff complained on a few occasions that some modification violated her restrictions (*e.g.*, when her position on the line was changed to locations which required her to reach further or higher or when she was denied use of a stand). *Id.* at 4. Prior to October 2010, the challenged changes were quickly reversed when Plaintiff complained. *Id.* at 3.

---

[1] A line adjuster spreads out chicken tenders on a conveyor belt as part of the breading process. *Id.* at 3-4. The belt is about 42 inches wide and the tenders weigh no more than an ounce each. Normally, one employee is placed on each side of the conveyor belt. *Id.* The height of the belt varies by a few inches from one end to the other, arguably requiring employees on the higher end to reach higher. For purposes of this order, the court assumes that the stands used by the employees cannot be adjusted to accommodate the height variation in the conveyor belt, although this is not clear from the record.

In October 2010, Plaintiff again complained about job changes after her supervisor changed her position on the line and told her she had to reach out further on the belt.  *Id.* at 4.[2]  This complaint led to the discovery that there were no written restrictions in Plaintiff's employment/medical file.  *Id.* at 4-5.  Plaintiff apparently still then had and provided written evidence of the restrictions imposed in March 2005 to her supervisor and human resources personnel. *Id.* at 5.  Defendant's representatives told Plaintiff the restrictions were too old to remain in effect given that the document did not state the restrictions were permanent.  *Id.*[3]

Plaintiff continued to work as a line adjuster in and after October 2010, though apparently not always in her preferred position at the lower end of the conveyor belt.[4]  On January 15, 2011, Plaintiff filed an administrative charge of disability and age discrimination.  *Id.* at 5; Dkt. No. 23-5 ("Human Affairs Complaint").  The Human Affairs Complaint identified October 20, 2010, as the first and last date of the alleged discrimination.  It ultimately led to preparation of an incident report in February 28, 2011.  Report at 5; Dkt. No. 27-5 (incident report).  The incident report states that Plaintiff reported increased shoulder pain following an October 2010 rotation (change in position) on the line.  *Id.*

---

[2]  The move allegedly resulted in Plaintiff working in a location where the conveyor belt was a few inches higher than her preferred location, requiring her to reach further out or up or both.

[3]  Plaintiff concedes that the document from 2005 did not state the restrictions were permanent.  Her understanding that the restrictions were permanent was based on oral statements by a nurse in or around the time the restrictions were written.  By October 2010, the nurse who so advised Plaintiff was no longer employed by Defendant.

[4]  Plaintiff has not directed the court to evidence indicating how often she was placed on the higher end of the line after October 2010 or how long she was required to reach further out on the line.  Neither has she directed the court to evidence that the height variation or reaching requirement could not be accommodated by modification of the height of her stand. The court, nonetheless, assumes for purposes of this order that the changes in her location and reaching requirement could not be accommodated by changing the height of her stand and continued on a frequent basis from October 2010 until February 28, 2011, when new restrictions were imposed.

On the same day the incident report was prepared, Plaintiff was seen by a physician, Dr. Byrd. Report at 5. Dr. Byrd found no functional limitations but did note some tenderness over Plaintiff's right shoulder *Id.*; Dkt. No. 27-3 at 1. He diagnosed probable cuff tendinitis and imposed restrictions against working above shoulder level or reaching outward with the affected arm. Report at 6; Dkt. No. 27-4 at 2. Dr. Byrd noted the restrictions might need to be made permanent. *Id.*

Plaintiff was placed on transitional duty incorporating these restrictions. Report at 6; Dkt. No. 27-3 at 3. Plaintiff's follow up visits with Dr. Byrd ended in June 2011, at which point he made the restrictions permanent. Report at 6; Dkt. No. 27-4 at 2. Plaintiff provided these restrictions to Defendant, which, she concedes, abided by them since that time, including by not changing her position on the line. Report at 6.

Plaintiff also received evaluation of her shoulder and arm condition in connection with a workers' compensation claim filed in March 2011. Report at 6; Dkt. No. 27-4 at 1 (workers' compensation report referring to an injury sustained October 1, 2010). This evaluation led to rotator cuff surgery in April 2012. Report at 6. Plaintiff remained out of work until August 2012, when she returned to "light duty" with specific restrictions against lifting or carrying more than one pound, pushing or pulling more than three pounds, overhead work, and working at heights. *Id.* at 6-7; Dkt. No. 23-6. Plaintiff characterizes these restrictions as requiring she be placed on "very light duty." Report at 7.

Plaintiff argues the company failed to give her the duty she desired on her return, assignment to the company store. However, she has not directed the court to any evidence that the work she was assigned violated any restrictions imposed after her surgery. *Id.* at 7. Neither has she presented

evidence that work in the company store was within her restrictions or would have been lighter than her work as a line adjuster.

**OBJECTIONS**

Plaintiff objects to the recommendation that her ADA claim be dismissed. Her first objection is generic, being directed "to the Magistrate's overall finding that no evidence of disability discrimination exists." Dkt. No. 35 at 3.

Plaintiff makes two somewhat more specific objections. First, Plaintiff challenges the report as recommending the court find she was not a "qualified individual with a disability as she was not substantially impaired from working." Dkt. No. 35 at 3. In support of this objection, Plaintiff refers the court to the February 28, 2011 incident report (Dkt. No. 27-5) relating to Plaintiff's claim that she suffered an injury on October 1, 2010 when she was "rotated" on the line (that is, moved to a different position). *Id.* at 3-4. Plaintiff also refers to her January 15, 2011 Human Affairs Complaint (Dkt. No. 23-4), which, like the February 28, 2011 incident report, complains of an incident or injury in October 2010 resulting from her supervisor's alleged failure to honor past restrictions. *Id.* at 4. Without citing any evidentiary support, Plaintiff asserts that the failure to accommodate her difficulties (presumably in and after October 2010) caused her to require surgery in April 2012. Plaintiff argues that "there are special circumstances that require a closer inquiry as to whether or not Plaintiff was physically able to continue working or was substantially limited from working while continuing to work in order to maintain employment." Dkt. No. 35.

Second, Plaintiff challenges the recommendation that the court find no failure to accommodate in Defendant's decision not to assign Plaintiff to the company store after her return from surgery in August 2012. Plaintiff argues that Defendant violated the ADA when it did not attempt to locate alternative employment for her after denying this request.

**DISCUSSION**

At least Plaintiff's first objection, and arguably all three, are too general to warrant *de novo* review. As explained in *United States v. Midgette*, 478 F.3d 616 (4th Cir. 2007), "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Midgette*, 478 F.3d at 622 (joining majority of courts to address the issue and noting that "[t]o conclude otherwise would defeat the purpose of requiring objections").

Even if construed as sufficiently specific, the objections fail for reasons explained below. In this regard, the court construes Plaintiff's objections as challenging three recommended findings: (A) that Plaintiff was not a qualified individual with a disability; (B) that the October 2011 rotation of Plaintiff's position on the line was not a failure to accommodate; and (C) that the failure to reassign Plaintiff to the company store or offer some other lighter duty in August 2012 was not a failure to accommodate. These arguments are addressed below.

**A.    Disability Status**

For purposes of this order, the court assumes without deciding that Plaintiff suffered from an ADA-covered disability, which limited use of her right arm and shoulder.[5]    Prior to October 2010, any such disability was accommodated by assigning Plaintiff to a line-adjuster position and allowing her to work at her preferred location on the line. As the Report explains, any deviations from this accommodation were quickly rectified prior to October 2010. After February 28, 2011, Plaintiff had new restrictions, which she concedes Defendant has not violated.

---

[5] Given this assumption, the court need not resolve Plaintiff's objection to the Report to the extent it recommended a finding that she could not make out a *prima facie* case of failure to accommodate because she was either not disabled or was adequately accommodated. *See* Report at 8-9. The court, therefore, declines to adopt the Report to the extent of this recommendation.

The issue, then, becomes whether the two specific instances Plaintiff discusses in her objection (her supervisor's October 2010 rotation of her position on the line, which may have continued into February 2011, and Defendant's failure to assign her to the company store in August 2012 after her surgery) constitute individual instances of failure to accommodate. These incidents are discussed below.

**B.      October 2010 Rotation**

Plaintiff's primary focus is on an incident in October 2010, when her supervisor changed ("rotated") her position on the line.[6] While Plaintiff has presented evidence that this change caused an increase in her discomfort, she has not directed the court to evidence that it actually violated her prior (2005) restrictions against reaching up or out beyond a certain point with her right arm.[7] For example, she has not directed the court to evidence the 2005 restrictions precluded such movement. At most, she has directed the court to evidence that, prior to October 2010, her supervisor and one or more medical or human resources employees either interpreted Plaintiff's restrictions in this manner or, at least, deferred to Plaintiff's interpretation regarding placement on the line.

Plaintiff has also failed to direct the court to evidence that she became unable to perform her job as a result of any failure to accommodate in or after October 2010. Plaintiff argues that her

_____

[6] The related incident report refers to an event on October 1, 2010. The Human Affairs Complaint refers to an event that began and ended October 20, 2010. The difference in the date within October is not critical to this order, but does, at the least, limit Plaintiff's discrimination claim to incidents in and after October 2010. Plaintiff does not appear to argue otherwise as her objection focuses on alleged failures to accommodate in and after October 2010. To the extent Plaintiff's objections may relate to any earlier period, they are rejected. As explained in the Report, the record demonstrates that repeated accommodations were made from 2005 until October 2010, and any deviations from Plaintiff's requested accommodation (including specific location along the conveyor belt) were promptly corrected when Plaintiff reported them. Report at 10-11 (noting "Plaintiff has alleged only isolated and brief instances in which she was rotated on the line").

[7] The record does not contain, or at least no party has drawn the court's attention to any documentation of the restrictions imposed in 2005.

8

inability to perform her job without accommodation is supported by evidence she "had to undergo surgery on her shoulder in April 2012" as a result of her continued work after Defendant "fail[ed] to honor restrictions." Dkt. No. 35 at 4. The first difficulty with this argument is an absence of factual support. Plaintiff has not directed the court to any evidence that her surgery was required because of any failure to honor restrictions in or after October 2010. Certainly no such inference arises given Plaintiff's complaints of shoulder pain dating back to 2003. Second, any failure to accommodate ended with the imposition of new restrictions on February 28, 2011. As this was more than a year before Plaintiff's surgery, it cannot be inferred that the surgery was needed to address a failure to accommodate at some earlier point in time.[8]

Plaintiff has also failed to direct the court to evidence that Defendant acted unreasonably in October 2010 in concluding that the 2005 restrictions were not permanent.[9] As noted above, Plaintiff concedes the documentation of the 2005 restrictions did not state they were permanent.

**Company Store.** Plaintiff's one-paragraph discussion of her request to be reassigned to the company store is also unavailing. Most critically, she has failed to point to any error in the Report's statement that the job requirements of the company store position were inconsistent with Plaintiff's reaching restrictions. Report at 11. Neither has she directed the court to any evidence that she was

---

[8] Given the lack of evidence of a causative link between the alleged failure to accommodate and the surgery, the court need not decide whether an absence from work following surgery allegedly necessitated by a failure to accommodate may constitute evidence of a disabling condition requiring accommodation.

[9] The evidence discussed in the Report demonstrates that Plaintiff's supervisor investigated whether there was a restriction on file when Plaintiff complained of the rotation. None was found and Plaintiff's proffer of the restriction imposed five or so years earlier was deemed insufficient because it did not state that the restriction was permanent. Plaintiff does not direct the court to any evidence that this was an unreasonable interpretation of whatever note was then in existence. Neither does she direct the court to any other evidence of unreasonableness in Defendant's alleged failure to assign Plaintiff her preferred location on the line from October 2010 until new restrictions were imposed in February 2011.

unable to perform the job to which she was assigned after surgery.   To the contrary, Plaintiff admitted in her deposition that her post-surgery assignment did not violate any of her post-surgery restrictions.  Absent such evidence, her employer had no reason to search out any other alternative placement for her.

**CONCLUSION**

For reasons stated above, the court adopts the Report except as noted above (n.5) and grants Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
November 12, 2013